and we'll hear argument next in Spadaro v. United States Customs and Border, patrol 191157. Mr. Groban. May it please the court, my name is Bob Groban and together with David Clark, we and our respective firms represent appellant Sara Spadaro in this appeal. The primary error in the decision below was the district court's broad reading of INA section 1202F that allowed the state department to invoke FOIA exemption 3 to withhold records regarding prudential revocation of Mr. Spadaro's visitor's visa. This is an issue of first impression in the courts of appeals. The majority of the district courts, including both of the other district court decisions in the second circuit, support Mr. Spadaro's position. We do not question that section 1202F is a withholding statute under exemption 3. We claim that the lower court erred in two major respects. First, it ignored the plain language of section 1202F by judicially expanding its scope to include revocation proceedings, even though they are defined separately in section 1201I. And second, it reached a conclusion that it's inconsistent with a proper understanding of the legislative history and overall statutory scheme and has the administrative removal process. Since this is an issue of statutory construction, we begin with the plain language of the statute. The confidentiality provision 1202F appears in section 1202, which specifically addresses the visa application process, and the statute makes clear that this is distinct from the visa revocation process. Visa applications are defined by the statute in 101A26 as a visa issued by a competent officer. Under the State Department regulations, a competent officer is a consular officer abroad. 1202H requires a personal interview by a consular officer abroad. Under the Supreme Court's doctrine of consular nonreviewability, these decisions are not subject to judicial review. In this context, 1202F was designed to protect that decision-making process. 1201I, the revocation proceeding, was implemented by Volume 9 of the FAM, the Foreign Affairs Manual of 40311. In Volume 9, 40311, you have one more minute. Thank you. Prudential revocations are done by the State Department, not consular officers. They can be based on any sort of derogatory information or for virtually any reason. And this is what happened in Mr. Spadaro. The alien generally is in the U.S., and it does not involve any visa application or consular deliberation. And until 2004, the courts would review these decisions under the APA. There are thus procedural, substantive, and constitutional distinctions between visa applications on the one hand and prudential revocation decisions on the other that would documents protected by 1202F. Now, the legislative history surrounding 1202I, 1201I, excuse me, confirms Congress' decision. As we indicated, up until 2004, the courts had exercised jurisdiction over decisions, State Department decisions revoking visas in the United States. But in 2004, Congress passed the Intelligence Reform and Terrorism Prevention Act. This maintained the distinction between visa revocations on the one hand and visa applications on the other. But it reduced judicial review of State Department revocations and permits judicial review only when the removal is based on the revocation. We submit Congress would never have extended 1202F to include visa revocations because it would have interfered with the removal proceedings. The district court and the government interpret 1202F to be an absolute bar for the State Department to release any documents. Yet, under the immigration laws, the foreign national is given a statutory right to examine the evidence at their removal proceedings. Under the law... Bianco or Judge Park, you should feel free to jump in at any time. Yeah, I guess, Mr. Gropen, I'm having a hard time at least understanding why this isn't at least ambiguous. Pertaining to is a very broad, as you know, is a very broad phrase. And just because they're distinct phases doesn't mean that the revocation doesn't pertain to the issuance. It's a nullification of the issuance, as the court noted in Soto. I was trying to think and you can tell me if this analogy you think is not applicable here. If you make a purchase at a store, a customer makes a purchase at a store, government subpoenas all documents from the store pertaining to the purchase, and there was a refund of that purchase a week later, would it be your position that a refund doesn't pertain to the purchase under that scenario? Your Honor, I think that presents a much different situation than what's outlined in the immigration laws. And of course, we're construing the plain language of the statute in a FOIA context where this court has consistently indicated that it should be construed narrowly and in favor of disclosure. But turning to the specific point, remember, and the reason that I went through the distinctions between a visa application to a consulate and a visa revocation by the State Department is that they're two completely different processes, so that it would be as if the individual going into the store made a purchase but then went across state lines into a completely different jurisdiction. Here, the Congress and the courts have treated visa applications and visa revocations differently. But if the goal of this was to protect the decision-making process behind, not to call the documents related to the decision-making process, I understand why the location of where the decision was made would be the critical factor. If the goal was to say, we don't think the government should have to disclose all these documents related to why they did or did not issue an application or why they revoked it, why would there be a distinction there? I'm sorry, Your Honor. The distinction is who makes the decision. And in the visa application, it's made by the consular officer where the courts have been clear and Congress has been clear and 1202F confirms that the consular decision-making process is inviolable. On the other hand, where you have a provincial revocation under 1201I, the courts have always entertained, or up until the 2004 Act, had always entertained judicial review. You didn't have the type of confidentiality concerns. And because the foreign nationals were in the United States, there were due process concerns over whether or not you could simply shut off inquiry into a government decision. So we view those as completely distinct processes and that's the way the statute treats them. What about the fact that 1201... I'm sorry, go ahead, Judge Park. Judge Park. Sorry. I was just going to ask just to follow up on that. As a matter of interpretation, does that mean that they are not what Section 222F states as the subject is, the records of the Department of State and the diplomatic and consular offices of the U.S.? It seems encompassed by that, whether or not they're separate processes or not. Well, Your Honor, under our construction of the statute, which we believe is confirmed with the legislative history in the plain language of the statute, when the State Department makes a revoke a visa, it doesn't benefit from the confidentiality provisions of 1202F. Now, there may be other grounds on which, and even in the immigration laws, it does make provision for protective order, for security issues and law enforcement issues and things like that. But what we're speaking about here is simply the purview of 1202F and whether it logically could be extended. And what we're saying is it doesn't make sense. It's inconsistent with the plain language. It ignores the legislative history. And remember, we're construing it not just in a FOIA context, but also in connection with the overall administration of the immigration laws. What about Mr. Groban, that 1201 itself is entitled issuance of visas and the revocation 1201 subsection I is within that section. Again, doesn't that suggest that when they use the term issue of visas, that that could include the revocation process as well? They put it in the same provision, the same overall print 1201. They put it in 1201, but they didn't put it in 1202. And so because these processes are so different and because of the procedural, substantive and even constitutional dimensions surrounding a 1201I decision, frankly, I think it's a pretty slim read to go to the title of the statute, as opposed to the way in which the statutory scheme is organized. And I mean, if you think about this logically, what the government's position is, is that let's assume that Mr. Spadaro was put into removal proceedings based on the revocation of his visa. He then has a statutory right to examine the evidence. Well, under this statute, they can't produce the evidence. So now what they have to do is they have to petition to a federal district court for a court order, allowing the government to offer the evidence. Now there may be other reasons, but the entire purpose of that intelligence What's wrong with that process though? That's the whole point of the interest of justice exception when there is a lawsuit and the court needs those documents to review something. That's what the whole interest of justice exception is for, right? Not as if you couldn't get those documents if there was the ability to challenge the revocation decision. The thrust of the Intelligence Reform and Terrorism Prevention Act was to increase the flexibility and facility of the government to engage in removal. And what this interpretation judicial interpretation does is it stops that process in its tracks. And we do not think that that's a logical result consistent with the Congress's decision in the Intelligence Reform and Terrorism Prevention Act. Okay. Unless there are any other questions, we'll hear from Mr. Kim and Mr. Groban, you've reserved two minutes for rebuttal. Yes. Thank you, Your Honor. Mr. Kim. Good morning, Your Honors. My name is Stephen Chotkin. I serve as an assistant United States Attorney in the Southern District of New York. I represent the defendant appellate government agencies, as I did in the proceeding below. The district court correctly granted summary judgment in favor of the government as to the only two issues that have been preserved for First, the State Department properly applied Exemption 3 to withhold documents pertaining to Mr. Spadaro's various visa applications, including revocation materials, which fall under the ambit of Section 1202F of the INA. It is correct, Mr. Kim. This is just, I'm sorry to interrupt before you have three minutes, but it is correct that we have no precedent from the Second Circuit on this point. I believe that's correct, Your Honor. Mr. Groban is correct that no court of appeals, as far as we have found, has ruled on this issue. I would say the district courts are fairly evenly divided on this distinction. I think the majority of the courts in the D.C. Circuit, the district courts there, have adopted the interpretation that the second point, which is that the FBI also correctly withheld certain deliberative process and attorney work product material under Exemption 5. So to begin with, the State Department in Exemption 3, as Mr. Groban notes, there is no question that the INA is an Exemption 3 statute. Mr. Spadaro's argument that the records are not application related in the first instance is deeply dispelled because it's based on a flawed premise, that because the dates of the records predate his applications, that they can't be application related. But as Judge Sullivan noted, as explained by the agency declarants, and as a matter of common sense, the dates of the creation of the records don't speak to whether or not they were reviewed as part of Mr. Spadaro's subsequent applications. Mr. Spadaro also relies on more speculation. Excuse me. You have one more minute. Thank you. Concerning the quantity of records related to revocation, that's belied by the bond declarations themselves. Many events, to the extent that Mr. Spadaro challenges adequacy of search, he's weighed that argument. It's not raised in his briefing before this court. The statutory language and structure of 1202F make clear that Congress fully intended visa revocation materials to be protected from disclosure. The pertaining to language that's found in that section is very broad. I think Judge Bianco's analogy about the purse of the store is on point, which is that issuance and refusal, as consistently discussed in the statute, are two sides of the same coin. More to the point, Mr. Spadaro tries to draw a distinction between actions by consular officers versus prudential revocations by other officials. To the extent that that's even true, the court recognized in its question, the statute itself speaks about records kept by the secretary or consular officials, and nowhere in the statute, in either section 1201 or 1202, did Congress draw the kind of distinction that Mr. Spadaro is trying to draw here. Fundamentally, there's no reason why Congress would shield from disclosure as a categorical matter, deliberation by State Department officials over whether a visa should be issued, and yet somehow not cover that same deliberation, which is in substance the same when it happens after the initial act of issuance, when the decision is made to revoke that same visa. With respect to the FBI Exemption 3, Mr. Spadaro waived his argument that the FBI has not shown that the material withheld on five pages of emails were sufficiently shown to be deliberate process. In the district court, he only made the argument that, based on various inept exception doctrines, that the FBI could not categorically invoke that privilege. Therefore, he waived any arguments as to the substance of the agency's declarations as to that exemption. Mr. King, let me ask you to go back to Exemption 3 for a minute before you continue. You had it in your brief on page 18, and you referenced it today, this argument that we could avoid the issue of whether revocation pertains to the issuance of an application if we concluded, and Judge Sullivan, I think, noted this, that in the application process, you review potentially the revocation documents, and they become part of the application process. So, in other words, the 2008 revocation would have been reviewed in connection with the later visa applications. But there was no site in your brief to that from the record, and I looked back at the declarations and the Vaughn Index. I didn't see any reference to the fact that, in connection with the later applications, that the 2008 revocation document, I think it's three pages of documents that are undated. I don't know how we concluded that they were reviewed in connection with those later applications from the record. Can you address that? We certainly are. I believe that the declaration made mention that the consular officers would have reviewed these documents as part of the application process. They're part of the printouts that a consular officer would review. I didn't see that. I don't know if you have a site for that. I read the declaration. It just talks about this database, but there's cases that say just having it in the database doesn't mean that it was part of the process. So, I don't know if you have a site to the record for that. I didn't see anything where it said it would be our practice when we're doing an application to look at any prior revocations. I didn't see that anywhere. I don't think those precise words are used in the declaration, Your Honor. And the reference in the bond index to the records that are called undated, the reason why it's stated undated is not because these documents are just sort of thrown in the file without a date. They're sort of printouts of the database that would have accumulated this information over time, which is why it doesn't have a single date associated with them. I don't think the record, in fairness, the declaration specifically laid out which of those revocation documents were specifically viewed later on as part of the four subsequent applications. All right. Thank you. Thank you. It is true the declaration does speak about how the revocation materials would have been reviewed as part of Mr. Spadaro's subsequent applications. In any event, even if these were purely revocation documents, the structure of the statute makes clear that they are covered by 1202F. Does it matter, this is just Lillie, does it matter, Mr. Kim, that the document is reviewed or unreviewed by the agency officials? I'm sorry. In what sense? Well, I take it that this is a slight follow-up, I guess, to just Bianca's question. So, if a document relates to revocation, right, and it qualifies as confidential under 1202F, is it still a document that's subject to the exemption if that document has gone unreviewed by the agency officials who refused a visa? I think that if a document had not been reviewed by any State Department official pertaining to that particular process, then it wouldn't fairly fall under the statutory language pertaining to the refusal of visa. And that's why the State Department here, they processed over 100 pages of documents. I think material on at least 41 to 50 of those to address an argument that Mr. Cordaro makes, maybe implicitly, this isn't just a catch-all that the State Department uses to shield every single record in the application for the file of a foreign national. Clearly, the agency here went through the documents and fulfilled its obligations under FOIA, which is to carefully review, document by document, information that can be fairly withheld because it falls under 1202F, among other exemptions. The court briefly addressed this issue in terms of the statutory structure. If you look at Section 1201, that section broadly covers all aspects of issuance of visas. Now, Mr. Cordaro says that we rely on the mere title of the section, but we're looking at the substance of 1201. If the court looks at 1201, it covers not just the active issuing, but all the sort of part and parcel aspects of that, including surrender of the visa, surrender of documents, and under 1201I, specifically the revocation of a visa. And looking at 1201I, the language is very clear. After the issuance of a visa, the consular officer or the Secretary of State may at any time revoke the visa. Do you say it's very clear? The problem, of course, is, as you pointed out at the beginning, we've got district court judges within our circuit, outside of our circuit, that seem to be relatively evenly divided. Yes, Your Honor. I mean, certainly, reasonable minds in the district courts have disagreed about this very issue. And I don't want to overstate that this is a masterpiece of congressional drafting. You would be overstating it if you said that. Yes. But to be fair to Congress, at the same time, there is a relatively clear structure in the way that it's been outlined. And Congress is consistently viewing issuance and refusal as well as revocation as two sides of the same coin, as Jeff Sullivan put it, adopting the language of SOTO. I would say, if you look at, I think, the primary case that comes the other way, and that's from the District of Connecticut 12 years ago, and El-Badrayi, the analysis there really turns on, as Mr. Spadaro bases his argument here, on this Intelligence Reform and Terrorism Prevention Act. But, I mean, that, of course, is not legislative history for the INA. That's post-enactment history, which, of course, this court and other courts have recognized as a dubious value. Even engaging with the merits of that act did, which was primarily about, as the title suggests, reforming intelligence and terrorism prevention, that act made some changes to revocation procedures and application requirements. But the mere fact of doing that says nothing about Congress's initial intent back when it passed the INA of categorizing these things in the way that they did. So, respectfully, the entire line of contrary District Court precedent hasn't thought about this issue, I think, in the same measured way as the SOTO Court and Judge Sullivan in the proceedings here. Judge Bianco, Judge Park, do you have any other further questions of Mr. Kim? No, thank you. Mr. Grubin, you have two minutes for rebuttal. Thank you very much, Your Honor. In the first place, the SOTO decision is easily distinguishable. It was based on a consular officer's decision. There was no prudential revocation. With respect to this notion of documents in a database, you know, Judge Daniels addressed this in the Immigration Justice Clinic case. And the State Department position in this case, as it was in that case, that if the document is in their database, in their consular officer database, it is by that very nature covered by 1202F, even if it was never looked at. That's been the problem. And the issue here is that there are numerous documents included in that database, some of which are CBP records that the CBP disclosed. Other ones are arrival and departure information, which is publicly available. The visa revocation documentation, I think they're four or five pages. You know, we discussed that. They could put a New York Times article in there and it would still, according to their interpretation of 1202F, mean that it was not subject to FOIA exemption. So our position simply is that the structure of the statute, Mr. Kim talks about, the government talks about the subject of the statute, would it make sense. In the immigration world, you know, the late Chief Judge Kauffman compared the immigration laws and complexity to King Minus's Labyrinth in Ancient Crete. And for that reason, this court consistently has enforced the plain language of this statute. It did it in Houssik, it did it in Nanyang, it did it recently in the Manning decision. There are reasons why Congress would have done this, because revocation proceedings involve different procedural, substantive, and constitutional issues, and that Intelligence Reform and Terrorism Act is important because it maintained those distinctions. It's not legislative history to the original section, but by maintaining the distinctions and limiting judicial review of consular revocations, it showed that Congress was thinking about this, recognized the constitutional distinctions, and what they had to do to make the statute constitutionally valid. I've used my time. Are there any questions, Judge Bianco or Judge Park? No, thank you. No, thank you very much.